## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF LOUISIANA
## ALEXANDRIA DIVISION

| | |
|---|---|
| **JERRY MCKINNEY** | **CIVIL DOCKET NO.  1:19-CV-01339** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **SHERIFFS OFFICE RAPIDES PARISH, ET AL** | **MAGISTRATE JUDGE JOSEPH H.L. PEREZ-MONTES** |

### MEMORANDUM RULING

Before the Court are cross-motions for summary judgment filed by Plaintiff and Defendant, respectively. [Doc. 26 and 37].[1] For the reasons set forth below, Defendant's Motion is **GRANTED IN PART** and **DENIED IN PART** and Plaintiff's Motion is **DENIED**.

### PROCEDURAL HISTORY

On October 11, 2019, former Rapides Parish Sheriff's Deputy Jerry McKinney ("Deputy McKinney") filed the instant suit against the Rapides Parish Sheriff's Office ("RPSO") and Sheriff William Earl Hilton ("Sheriff Hilton") alleging disability discrimination and disability-based retaliation in violation of Title I of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq. [Doc. 1].[2] Deputy McKinney claims, generally, that the RPSO wrongfully refused his request for reasonable accommodations, failed to engage in the ADA-required interactive process between

---

[1]     The parties' motions do not address Plaintiff's state law claims. Accordingly, the Court has limited its ruling herein to the Plaintiff's claims under the ADA.

[2]     RPSO was dismissed with prejudice on December 18, 2019. [Doc. 7]. Sheriff Hilton is the only remaining Defendant.

employer and employee to explore possible accommodations, and retaliated against him for requesting accommodations.

On August 31, 2020, Deputy McKinney filed a Motion for Summary Judgment ("MSJ") seeking judgment against the Defendant. [Doc. 26]. On September 3, 2020, the Court granted Defendant's Motion for Extension of Time to Respond to Deputy McKinney's Motion for Summary Judgment. [Doc. 35]. On October 1, 2020, Defendant filed an Opposition to Deputy McKinney's Motion for Summary Judgment [Doc. 38] and its own Motion for Summary Judgment seeking dismissal of Deputy McKinney's ADA claims. [Doc. 37]. On November 6, 2020, Deputy McKinney filed a single Memorandum both opposing the Defendant's MSJ and replying to Defendant's opposition to his MSJ. [Doc. 46]. On November 11, 2020, Defendant filed a sur-reply to Plaintiff's MSJ. [Doc. 48].

Deputy McKinney passed away on December 1, 2020.[3] The Court granted Plaintiff's Consent Motion to Substitute Party [Doc. 56], substituting Deputy McKinney's wife, Pamela McKinney, as Plaintiff ("Plaintiff") on February 2, 2021. [Doc. 57]. The cross-motions for summary judgment are now ripe for ruling.

## FACTUAL BACKGROUND

Deputy McKinney began working for RPSO in 1998 as a correctional officer, sometimes referred to as a "jailer." [Doc. 1 ¶ 21]. In 2009, Deputy McKinney transferred within RPSO to a position in courtroom security. [Doc. 1 ¶¶ 23, 24].

---

[3]     Plaintiff's counsel filed a Notice of and Suggestion of Death informing the Court of Deputy McKinney's death on January 4, 2021. [Doc. 52].

Deputy McKinney suffered a stroke in November of 2017 and was subsequently placed on medical leave. [Doc. 26-1, p.10]. Deputy McKinney's stroke affected his speech, hearing, and ability to perform certain manual tasks. [Doc. 1 ¶ 25]. In February 2018, Deputy McKinney returned to his job working courtroom security. [Doc. 1 ¶ 29].

Several months later, in a letter dated November 8, 2018, Major Mark Wood informed Deputy McKinney that effective November 12, 2018, he was being transferred from courtroom security back to corrections, to work as a jailer. [Doc. 1-5]. The position of jailer required Deputy McKinney to work twelve-hours shifts, as opposed to the eight-hour shifts he was previously working at the courthouse. [Doc. 1 ¶ 30]. On November 27, 2018, Deputy McKinney submitted a letter ("First Request for Accommodation")[4] from his doctor to his employer stating that, "[b]ecause of [Deputy McKinney's] neurological status, he probably needs to work in an administrative setting with no loud noises[]" and "is to work 8 hours a day because I do not want his stress level to go up and cause elevated blood pressure with repeat stroke[.]" [Doc. 1-4; Doc 26-7]. On November 29, 2018, Deputy McKinney's superior, Major Douglas Hollingsworth ("Major Hollingsworth"), responded by letter to Deputy McKinney, stating that his "job description is working a 12 hour shift with offenders and if you cannot do this, my suggestion is to retire." [Doc. 1-6].

---

[4]     The Court has identified at least three requests for an accommodation by Deputy McKinney and for purposes of clarity and ease has labeled them accordingly.

On December 5, 2018, Deputy McKinney submitted a letter ("Second Request for Accommodation") to the RPSO Human Resources Department formally "requesting reasonable accommodation." [Doc. 1-7; Doc. 26-10]. His letter indicated that while he was able and willing to work eight-hour shifts, he was unable to work twelve-hour shifts and further requested that he "be placed in administrative work or work where … there are no loud noises." [*Id*.]. On December 10, 2018, Sheriff Hilton responded to Deputy McKinney's letter, stating that "[w]e do not have '8 hour' shifts for correctional officers[]" and "there are no other positions available in the department for which you are qualified, and we feel it is time for you to retire." [Doc. 1-8].

On December 17, 2018, Deputy McKinney submitted a letter ("Third Request for Accommodation") to Sheriff Hilton stating "[m]y request for an accommodation is to work in any other section of the sheriff's office which may have eight-hour shift." [Doc. 1-9; Doc. 26-12]. The letter went on to say that, "I would like to request that I be assigned to a job in a section of the office in which an eight-hour shift is available" and stating that "I do not want to retire at this time[.]" [*Id*.]. On December 19, 2018, Sheriff Hilton responded by letter to Deputy McKinney, stating "you do not meet 'POST' requirements for that of a law enforcement officer and there are no other positions available in the department for which you are qualified."[5] [Doc. 1-10]. The

---

[5]     P.O.S.T. is an acronym for Peace Officer Standards and Training and is administered by the Louisiana P.O.S.T. Council.

letter also informed Deputy McKinney "that effective immediately your services with the Rapides Parish Sheriff's Office are no longer needed." [*Id.*].

On April 26, 2019, Deputy McKinney filed a Charge of Discrimination ("EEOC Charge") [Doc. 1-13] with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on disability. On July 15, 2019, Deputy McKinney amended his EEOC Charge to include a retaliation claim. [Doc. 1-14]. On July 16, 2019, the EEOC issued a Dismissal and Notice of Rights to Deputy McKinney. [Doc. 1-15]. Deputy McKinney timely filed the instant suit and asserted three claims under the ADA: (i) failure-to-accommodate, (ii) failure to engage in the interactive process, and (iii) retaliation. 42 U.S.C. §§ 12112(b)(5)(A), 12203(a).[6]

### ARGUMENTS BEFORE COURT

Plaintiff asserts that Deputy McKinney was a "qualified individual" under the ADA who requested eight-hour work shifts as a "reasonable accommodation." Plaintiff also asserts that RPSO initially allowed Deputy McKinney to work eight-hour shifts after his transfer but shortly thereafter insisted that his job required that he work twelve-hour shifts. In addition, Plaintiff alleges that RPSO refused to engage in the "interactive process" to identify a reasonable accommodation for Deputy McKinney. Finally, Plaintiff claims that RPSO terminated Deputy McKinney because he asked for and received eight-hour shifts.

---

[6] Although Plaintiff's claim for failure to engage in the interactive process is not explicitly recognized in the text of the ADA, the Fifth Circuit has recognized such claim. *See e.g.*, *Jackson v. Blue Mountain Production Company*, 761 Fed. Appx. 356, 362 (5th Cir. 2019).

Defendant argues Deputy McKinney was not "disabled" as defined by the ADA. Defendant also argues that Deputy McKinney was not a "qualified individual" under the ADA, because Deputy McKinney could not perform the "essential functions" of his job. Further, even though Defendant disputes whether Deputy McKinney was entitled to ADA protection, Defendant claims that the ADA did not require an accommodation in this instance because Deputy McKinney acknowledged that he would be a danger to himself and the inmates if he were to work in the jail. Lastly, Defendant maintains that the ADA did not require Defendant to create a new position for Deputy McKinney.

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). In applying this standard, the Court should construe "all facts and inferences in favor of the nonmoving party." *Deshotel v. Wal-Mart Louisiana, L.L.C.*, 850 F.3d 742, 745 (5th Cir. 2017); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). As such, the party moving for summary judgment bears the burden of demonstrating that there is no genuine issue of material fact as to issues critical to trial that would result in the movant's entitlement to judgment in its favor, including identifying the relevant portions of pleadings and discovery. *Tubacex, Inc.*

*v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the moving party's motion for summary judgment if the movant fails to meet this burden. *Id.*

If the movant satisfies its burden, however, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* (citing *Celotex*, 477 U.S. at 323). In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no genuine issue for trial – and thus a grant of summary judgment is warranted – when the record as a whole "could not lead a rational trier of fact to find for the non-moving party...." *Id.*

<u>LAW AND ANALYSIS</u>

## I.    <u>Failure to Accommodate Claim</u>

The ADA prohibits covered employers from "discriminat[ing] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). Discrimination includes failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability … unless such covered entity can demonstrate that the accommodation would impose an undue hardship." 42 U.S.C. § 12112(b)(5)(A). To succeed on a failure-to-accommodate claim under the ADA, a plaintiff must show that: (1) he is a "qualified individual with a disability;" (2) his disability and its consequential limitations were "known" by the covered employer; and (3) the employer failed to make "reasonable accommodations" for such known limitations. *Feist v. Louisiana, Dept. of Justice, Office of the Atty.*

*Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (internal quotation marks omitted). Thus, to survive summary judgment, Plaintiff must first prove that Deputy McKinney was disabled within the meaning of the ADA. If he was not, the inquiry into the failure-to-accommodate claim ends.

### A. <u>Disability</u>

The parties dispute whether Deputy McKinney was disabled under the ADA. The 2008 amendments to the ADA were intended to ensure that "the definition of disability … be construed in favor of broad coverage." 42 U.S.C. § 12102(4)(A). The ADA defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment...." 42 U.S.C. § 12102(1). The three subsections of the disability definition are referred to as the "actual disability" prong, the "record of" prong, and the "regarded as" prong, respectively. Although a plaintiff need only prove disability under one prong, Plaintiff contends Deputy McKinney was disabled under all three. [Doc. 26-1, p.16-17]. The Court will therefore examine the evidence of disability under each provision.

### i. <u>Actual Disability</u>

To prove "actual disability" under the first prong, Plaintiff must show Deputy McKinney had "a physical or mental impairment that substantially limit[ed] one or more major life activities." 42 U.S.C. § 12102(1)(A). This test requires a plaintiff to prove two things: (i) that he had a qualifying "physical or mental impairment," and (ii) that impairment "substantially limit[ed] one or more major life activities." First,

the Court examines whether Deputy McKinney had a qualifying physical or mental impairment.

Impairment

The applicable EEOC regulations define physical or mental impairment as "[a]ny physiological disorder or condition … affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine." 29 C.F.R. § 1630.2(h)(1). Plaintiff does not clearly identify Deputy McKinney's impairment. However, the Court concludes that Plaintiff is asserting that Deputy McKinney's stroke and its resulting effects is the impairment for purposes of this analysis. In this regard, the relevant text of the Complaint states the following:

> "*After his stroke*, Deputy McKinney had physical and mental impairments, specifically impairment of his *neurological function*." [Doc. 1 ¶ 25] (emphasis added).

> "Deputy McKinney suffered a disabling *stroke* giving him mental impairments of his *neurological function*…." [Doc. 1 ¶ 62] (emphasis added).

> "Deputy McKinney's *neurological and physical impairments resulting from his stroke* reduced his ability to work long hours, work in a noisy environment, or perform the manual task of shooting his firearm." [Doc. 1 ¶ 65] (emphasis added).

> "Deputy McKinney's *physical and neurological impairments resulting from his stroke* satisfies the disability requirement…." [Doc. 1 ¶ 79] (emphasis added).

The Court understands Plaintiff's statements as alleging that Deputy McKinney's health deficits resulting from his stroke was his impairment because

these deficits were conditions affecting his neurological system. This assertion conforms with the definition of "physical or mental impairment" under the ADA. *See* 29 C.F.R. § 1630.2(h)(1). However, subsequently, in Plaintiff's Opposition/Reply, Plaintiff avers that his impairment was related to his blood pressure and the potential for stroke recurrence. In this regard, Plaintiff states:

> "[T]his lawsuit is about how McKinney requested eight-hour shifts instead of twelve-hour shifts as an accommodation for his ***high blood pressure***, which his doctor said could result in a repeated stroke." [Doc. 46, p.4].

> "[T]his case is *not* a hearing-impairment accommodation lawsuit. It is about a totally different issue – the fact that due to Deputy McKinney's ***stroke and high blood pressure***, his doctor recommended that he work eight-hour shifts to mitigate the [sic] of 'repeat stroke, especially a hemorrhagic stroke.'" [Doc. 46, p.10] (emphasis added).

> "This case is about the way [Deputy McKinney] *was* disabled – specifically, that he had had a stroke that resulted in a number of problems, including the risk that his ***high blood pressure*** would cause a subsequent stroke. [Doc. 46, p.11-12] (emphasis added).

> "But the doctor also testified that despite the general back-to-baseline status, McKinney was 'still having the issue of ***blood pressure***' – which is the medical issue relevant to Plaintiff's claim here." [Doc. 46, p.12-13] (emphasis added).

Plaintiff does not explain how "blood pressure" fits into the disability analysis and the issue has not been properly pled. The Court notes that "blood pressure" does not appear anywhere in the Complaint or Deputy McKinney's EEOC Charge (original or amended). Thus, for purposes of this motion, the Court considers only Plaintiff's initial argument, that Deputy McKinney's stroke was his impairment.

Substantially Limited a Major Life Activity

Not every impairment constitutes a disability under the ADA. 29 C.F.R. § 1630.2(j)(1)(ii). Deputy McKinney's impairment must have substantially limited one or more major life activities. The determination of whether an impairment is "substantially limiting" turns on whether the impairment "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." *Id*.

Major life activities include, but are not limited to:

(i) Caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working; and

(ii) The operation of a major bodily function, including functions of the immune system, special sense organs and skin, normal cell growth, digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions. The operation of a major bodily function includes the operation of an individual organ within a body system.

29 C.F.R. § 1630.2(i)(1).

Plaintiff is not required to present medical evidence to support her claim that Deputy McKinney was disabled as defined under the ADA. *See* 29 C.F.R. § 1630.2(j)(1)(v). However, Plaintiff is required to provide specific, detailed evidence regarding Deputy McKinney's impairment and its effect on his abilities. Whether or not an impairment "substantially limits" a major life activity "is not meant to be a demanding standard," and "should not demand extensive analysis." 29 C.F.R. § 1630.2(j)(1)(i), (iii).

Plaintiff asserts that Deputy McKinney's stroke affected his speaking, hearing, caring for himself, bending, sleeping, communicating, and his ability to perform certain manual tasks. [Doc. 1 ¶ 62]. Further, Plaintiff asserts that Deputy McKinney's stroke impacted the operation of two major bodily functions, his brain and his bladder, as well as his right eye function. [Doc. 1 ¶ 64]. Plaintiff claims that Deputy McKinney's speech became slower and slurred. [Doc. 1 ¶ 63]. He required assistance for certain tasks when getting dressed, *e.g.*, tying his tie. [*Id*.]. He had difficulty bending his right leg. [*Id*.]. He also had trouble sleeping and experienced lower energy levels as a result of the stroke. [*Id*.]. In support of Plaintiff's contention that Deputy McKinney's stroke was substantially limiting, Plaintiff cites two letters from Deputy McKinney's neurologist, Dr. M. Riad Hajmurad ("Dr. Hajmurad"). [Doc. 26-1, p.17 n.86-87]. Both letters detailed Deputy McKinney's physical condition and specified work-related restrictions for Deputy McKinney. [Doc. 26-7; Doc. 26-17]. Plaintiff also cites to an RPSO Incident Report ("Incident Report") wherein an RPSO officer described Deputy McKinney's physical difficulties walking, speaking, and communicating. [Doc. 26-6]. The Court also finds it relevant that Deputy McKinney was on medical leave for almost three months after his stroke.

In opposition, Defendant argues that Deputy McKinney's stroke was not substantially limiting. Defendant points to Dr. Hajmurad's deposition testimony that, "[Deputy McKinney] does not have large stroke. Okay, like make him impaired. He does not have significant motor deficit. He does have affecting the speech, and his comprehension is good. It's affecting a little bit." [Doc. 37-3, p.2]. In addition,

Defendant argues that in his deposition Dr. Hajmurad "retracted" the two letters relied on by Plaintiff and discussed above. [Doc. 38, p.20].

Although it is questionable whether both letters have been "retracted," Dr. Hajmurad's deposition testimony certainly raises questions concerning the facts stated therein. As such, there is a genuine issue of material fact as to whether Plaintiff's stroke *substantially* limited one or more of his major life activities. Accordingly, both parties' motions for summary judgment are denied as to whether Deputy McKinney was disabled under the "actual disability" prong.

      ii.   <u>Record of Disability</u>

Under the applicable EEOC regulation, "[a]n individual has a record of a disability if the individual has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k)(1). "There are many types of records that could potentially contain this information, including but not limited to, education, medical, or employment records." 29 C.F.R. Pt. 1630, App. As noted, there is a genuine issue of material fact as to whether Deputy McKinney's stroke substantially limited one or more of his major life activities. This genuine issue of material fact likewise precludes summary judgment on the issue of whether Deputy McKinney was disabled under the "record of" prong.

      iii.   <u>Regarded as Disabled</u>

A plaintiff can state a claim under the ADA not only where he is actually disabled, but also where he is "regarded as" disabled by his employer. 42 U.S.C. §

12102(1)(C); *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 230 (5th Cir. 2015). However, after the passage of the ADA Amendments Act of 2008 ("ADAAA"), employers are no longer required to "provide a reasonable accommodation or a reasonable modification to policies, practices, or procedures to an individual who meets the definition of disability in section 12102(1) of this title solely under subparagraph (C) of such section." 42 U.S.C. § 12201(h); 29 C.F.R. § 1630.9(e). Accordingly, Plaintiff cannot state a claim for failure-to-accommodate to the extent that it is based upon Deputy McKinney being "regarded as" disabled under Section 12102(1)(C). *Cocke v. Lourdes Physician Group, LLC*, No. 18-1086, 2019 WL 2064248, *4 (W.D. La. May 9, 2019) (citing *Fierro v. Knight Transp.*, No. 12-218, 2012 WL 4321304, *3 (W.D. Tex. Sept. 18, 2012)). Because the claim for reasonable accommodation under the "regarded as" prong fails as a matter of law, Defendant's Motion for Summary Judgment is granted to the extent Plaintiff asserts a claim for failure-to-accommodate based upon Section 12102(1)(C).

## B. **Qualified**

The first element of Plaintiff's failure-to-accommodate claim next requires her to prove that Deputy McKinney was a qualified individual with a disability. "The ADA protects *qualified* individuals with disabilities from discrimination." *Picard v. St. Tammany Parish Hosp.*, 423 Fed. Appx. 467, 469 (5th Cir. 2011) (emphasis added). To establish that Deputy McKinney was "qualified," Plaintiff must show that either (1) Deputy McKinney could "perform the essential functions of the job in spite of his disability," or, if he could not, (2) that "a reasonable accommodation of his disability

would have enabled him to perform the essential functions of the job." *Gober v. Frankel Family Trust*, 537 Fed. Appx. 518, 521 (5th Cir. 2013) (quoting *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1093 (5th Cir. 1996)); 42 U.S.C. § 12111(8). "Essential functions" are "fundamental job duties of the employment position the individual with a disability holds or desires," as opposed to "marginal" job duties, 29 C.F.R. § 1630.2(n)(1), such that a job is "fundamentally alter[ed]" if an essential function is removed, 29 C.F.R. § Pt. 1630, App. "Congress did not specify which job functions are 'essential' under the ADA." *Riel v. Elec. Data Sys. Corp.*, 99 F.3d 678, 682 (5th Cir. 1996). "Fact-finders must determine whether a function is 'essential' on a case-by-case basis." *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 698 (5th Cir. 2014). The text of the ADA indicates where this inquiry should begin:

> For the purposes of this subchapter, consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.

42 U.S.C. § 12111(8).

Moreover, the EEOC explains that "the inquiry into essential functions is not intended to second guess an employer's business judgment with regard to production standards ... nor to require employers to lower such standards." 29 C.F.R. § Pt. 1630, App. Courts use the EEOC's seven non-exhaustive factors to balance whether a job function is essential:

(i)     The employer's judgment as to which functions are essential;

(ii)    Written job descriptions prepared before advertising or interviewing applicants for the job;

(iii)   The amount of time spent on the job performing the function;

(iv)   The consequences of not requiring the incumbent to perform the function;

(v)   The terms of a collective bargaining agreement;

(vi)   The work experience of past incumbents in the job; and/or

(vii)   The current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n)(3).

"Both the statute and regulations indicate that we must give greatest weight to the 'employer's judgment.' It is the *only* evidence the statute requires us to consider, absent a written job description." *Credeur v. La. Through Office of Attorney Gen.*, 860 F.3d 785, 792 (5th Cir. 2017). Courts, of course, "should not give blind deference to an employer's judgment, but should instead evaluate the employer's words alongside its policies and practices." *Id.* at 794.

The parties disagree with regard to whether twelve-hour shifts were an "essential" function of Deputy McKinney's job. While the record contains no written job description for an RPSO correctional officer, Defendant maintains that twelve-hour shifts are an essential function. Further, Defendant argues that because Deputy McKinney admitted he could not perform this essential function he was not a "qualified" individual protected under the ADA. [Doc. 37-1]. Plaintiff challenges Defendant's assertion that twelve-hour shifts are essential by pointing to inconsistencies in Defendant's own practices. Specifically, Plaintiff alleges that

Defendant has previously accommodated employees with eight-hour shifts. [Doc. 46, p. 7-8].

In this regard, Defendant admits that at least two employees, Lou Howard ("Howard") and Bobbie Duncan ("Duncan"), were allowed to work eight-hour shifts. However, an employee who proffers a fellow employee as a comparator must "demonstrate that the employment actions at issue were taken under nearly identical circumstances." *Credeur*, 860 F.3d at 795 (quoting *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009). "This requires, among other things, that the comparator shares 'the same job or responsibilities.'" *Id.* (quoting *Lee*, 574 F.3d at 260). As to Howard, Defendant admitted that Howard was a cook in the jail's kitchen but denied that he was assigned eight-hour shifts due to an injury. [Doc. 26-18, p.3]. On the contrary, Warden Baptiste testified that Howard *was* assigned eight-hour shifts because of an injury and that he was a correctional officer, not a cook. [Doc. 26-4, p.31, 40]. As to Duncan, Defendant admitted that Duncan worked eight-hour shifts at the jail because of a family issue but did not specify Duncan's job or position. [Doc. 26-18, p.4]. Warden Baptiste testified that Duncan was a correctional officer assigned to cleanup detail [Doc. 26-4, p.34-35, 77-78]. Thus, there is a genuine issue of material fact as to whether Howard and Duncan are similarly situated comparators, precluding summary judgment as to whether Deputy McKinney was a "qualified individual" under the ADA.

## C. **Known by Employer**

The second element of Plaintiff's failure-to-accommodate claim requires her to show Deputy McKinney's disability and its consequential limitations were known by Defendant. *Feist*, 730 F.3d at 452. The burden is on the employee to inform the employer. *Taylor v. Principal Financial Grp., Inc.*, 93 F.3d 155, 165 (5th Cir. 1996).

After Deputy McKinney's transfer to corrections, he gave Warden Baptiste his First Request for Accommodation, indicating that "[b]ecause of his neurological status, he probably needs to work in an administrative setting with no loud noises" and should work only eight hours a day. [Doc. 26-7]. Deputy McKinney's Second Request for Accommodation, sent to RPSO's Human Resources Department, likewise indicated that he had "suffered a stroke which left [him] with disabilities" and was formally "requesting reasonable accommodation[s]." [Doc. 26-10]. Deputy McKinney again explained that he was unable to work twelve-hour shifts and requested eight-hour shifts in a setting with no loud noises. [*Id*.]. Defendant responded to both letters. It is clear that Defendant knew of Deputy McKinney's stroke of his claimed limitations.

## D. **Reasonable Accommodations**

The third and final element of Plaintiff's failure-to-accommodate claim requires Plaintiff to show that Defendant failed to make reasonable accommodations for the employee's known limitations. *Feist*, 730 F.3d at 452. "[T]he ADA defines reasonable accommodations as 'job restructuring, part-time or modified work schedules, reassignment to a vacant position, ... and other similar accommodations.'"

*Weber v. BNSF Ry. Co.*, -- F.3d --, 2021 WL 716645, at *3 (5th Cir. 2021) (quoting 42 U.S.C. § 12111(9)(B)). Defendant does not dispute that Deputy McKinney was not provided accommodation.[7] [*See* Doc. 38-7]. However, open questions remain as to whether reasonable accommodations under the ADA framework were feasible.

The first question, discussed in detail above, is whether twelve-hour shifts are an "essential function" of an RPSO correctional officer. This is significant because if twelve-hour shifts are an essential function of a correctional officer, then Deputy McKinney's request for eight-hour shifts is, per se, not a *reasonable accommodation*. *Claiborne v. Recovery School District*, 690 Fed. Appx. 249, 254-55 (5th Cir. 2017) ("the ADA does not require the employer to 'relieve the employee of any essential functions of the job, modify the actual duties, or reassign existing employees or hire new employees to perform those duties.' ") (quoting *Robertson v. Neuromedical Ctr.*, 161 F.3d 292, 295 (5th Cir. 1998)).

If twelve-hours shifts were an essential function of Deputy McKinney's job, the Court must next consider whether Deputy McKinney should have been reassigned within the Sheriff's Department.[8] However, reassignment is not appropriate in all instances. Rather, "[a]n employer may be required to reassign a disabled employee to a vacant position, but only if that is reasonable." *Toronka v. Cont'l Airlines, Inc.*, 411

---

[7]     The Court recognizes that Warden Baptiste initially allowed Deputy McKinney to work eight-hour shifts. However, Major Hollingsworth very quickly overruled the warden's decision, instructing Deputy McKinney that his job required him to work twelve-hour shifts. Further, Defendant maintains Warden Baptiste lacked authority to grant the accommodation.

[8]     It should be noted that neither parties' briefing has identified an accommodation other than modification of Deputy McKinney's work schedule or reassignment.

Fed. Appx. 719, 724 (5th Cir. 2011) (citing 42 U.S.C. § 12111(9)). "For reassignment to be a reasonable accommodation, a position 'must first exist and be vacant.'" *Id*. at 726 (citing *Burch v. City of Nacogdoches*, 174 F.3d 615, 620 (5th Cir. 1999)). "[P]laintiff bears the burden of proving that an available position exists that he was qualified for and could, with reasonable accommodations, perform." *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007).

Plaintiff argues that she has satisfied her burden of showing reassignment was reasonable by pointing to the available position in the jail's kitchen, where, at the direction of Warden Baptiste, Deputy McKinney worked for a short time after being transferred back to corrections. [Doc. 46, p.17-18]. Plaintiff also argues that other jobs were available that Deputy McKinney was qualified for and which RPSO records indicate were vacant.[9] [*Id*.]. Defendant contends that Warden Baptiste lacked authority to allow Deputy McKinney to work eight-hour shifts in the kitchen, and, further, that there were no vacant positions within the RPSO. [Doc. 26-3, p.77, 85, 93]. Nonetheless, regardless of whether Warden Baptiste lacked authority, Defendant admitted in its deposition that there was "at least a part-time finance position and … maybe a jail records position" that was vacant. [Doc. 26-3, p.186-87]. However, it is unclear if these positions were available during the relevant time.

---

[9]     Deputy McKinney could not be transferred back to his former position in courtroom security because he was unable to re-qualify for P.O.S.T. certification, as required for this position.

Given the countervailing evidence as to reasonable accommodation, the Court finds there are genuine issues of material fact as to whether Defendant failed to provide a reasonable accommodation for Deputy McKinney's proffered limitations.

## II.   <u>Failure to Engage in the Interactive Process Claim</u>

An employee's request for an accommodation triggers an obligation on behalf of the employer to engage with good faith in an interactive process to identify an appropriate accommodation. *See Griffin v. United Parcel Service, Inc.*, 661 F.3d 216, 224 (5th Cir.2011). The purpose of this required interaction is for the parties to identify reasonably available accommodations. *See Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 735-36 (5th Cir.1999) (explaining the need for a bilateral dialogue due to information asymmetry). The exact contours of the process are unique to each case. *Id*. An employer is liable when its unwillingness to participate in the process leads to a failure to reasonably accommodate. *Griffin*, 661 F.3d at 224.

Plaintiff claims Defendant failed to engage in an interactive process with Deputy McKinney to find a reasonable accommodation for his disability. [Doc. 26-1, p.20-22]. Defendant argues that by looking at the roster for vacant positions and determining there were none, it engaged in the interactive process. [Doc. 38, p. 17]. In the alternative, Defendant argues that even if it did not engage in the interactive process, the breakdown in the process is due to Deputy McKinney. [*Id*.].[10]

---

[10]     *See Loulseged*, 178 F.3d at 736 ("an employer cannot be found to have violated the ADA when responsibility for the breakdown of the informal, interactive process is traceable to the employee and not the employer.") (internal quotation marks omitted).

Defendant's argument that any breakdown in the interactive process is attributable to Deputy McKinney is contrary to established law. Once Deputy McKinney provided Defendant with his first request for an accommodation, the Defendant was obligated to engage with good faith in an interactive process to identify an appropriate accommodation. Defendant's claim that the letter Deputy McKinney submitted requesting an accommodation was "improper," thereby triggering an obligation to engage in the interactive process while simultaneously breaking it down is unpersuasive.[11] Among other things, Deputy McKinney made at least two additional requests for an accommodation after the first request. Defendant does not address this fact.

Defendant further claims that RPSO engaged in the interactive process by looking at the roster for vacant positions and determining there were none. The Fifth Circuit opinion in *Silva v. City of Hidalgo* is instructive here. 575 Fed. Appx. 419, 422 (5th Cir. 2014). The plaintiff in *Silva* had to undergo surgery and take FMLA leave after she sustained an injury while jogging and had to undergo surgery. *Id*. Before returning from leave, plaintiff "requested to be placed on light duty or desk duty when she returned to the force" because she was unable to return to her position as a member of the city's Special Weapons and Tactics Team ("SWAT"). *Id*. Her employer, the City, denied her request and told her "that if she did not return to work in her

---

[11]    Defendant claims Plaintiff's request was "improper" because the letter was based on "inaccurate information" due to the fact that Dr. Hajmurad has since retracted the letter. Whether Dr. Hajmurad has retracted the November letter is disputed and has no bearing here.

former capacity when her leave expired she would be deemed to have resigned." *Id*. Thereafter, the plaintiff "renew[ed] her appeal for light or desk duty or, in the alternative, request[ed] 'FMLA leave and any other available medical or other available leave' because she did 'not expect to be able to return to work for at leat [sic] another month.'" *Id*. The plaintiff also provided an assessment letter that "stated that her doctor was 'willing to sign for her to continue to be off work for at least another three months if necessary.'" *Id*. The City responded by letter "that there were no available positions that met [her] physical limitations and informed [her] that she had been terminated for failure to return to work." *Id*. The plaintiff sued the City for failure to engage in the interactive process. *Id*. at 423.

The Fifth Circuit found that the City had not failed to engage in the interactive process because there was "no evidence that a reasonable accommodation was feasible." *Id*. at 424 ("[E]ven if a genuine issue of material fact exists as to whether the City participated in the interactive process in good faith, its dereliction cannot be said to have *led* to a failure to reasonably accommodate Silva because there is no evidence that a reasonable accommodation was feasible."). "The regulation's direction to the parties to engage in an interactive process is not an end in itself – it is a means to the end of forging reasonable accommodations." *Id*. at 424 (quoting *Loulseged*, 178 F.3d at 736). However, unlike in *Silva*, this Court finds that there is a genuine issue of material fact as to whether a reasonable accommodation existed. Accordingly, both parties' motions for summary judgment are denied as to Plaintiff's claim for failure to engage in the interactive process.

### III.   <u>Retaliation Claim</u>

Plaintiff has also asserted a claim of retaliation under the ADA. In order to establish a *prima facie* case of retaliation under the ADA, Plaintiff "must show that (1) [Deputy McKinney] participated in an activity protected under the statute; (2) [his] employer took an adverse employment action against [him]; and (3) a causal connection exists between the protected activity and the adverse action."[12] *Feist*, 730 F.3d at 454 (5th Cir. 2013) (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007) (Title VII); *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999) (ADA)). "If the employee establishes a *prima facie* case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation." *Id*. (quoting *LeMaire v. Louisiana*, 480 F.3d 383, 388-89 (5th Cir. 2007) (emphasis added). "A *prima facie* case coupled with a showing that the proffered reason was pretextual will usually be sufficient to survive summary judgment." *Hammond v. Jacobs Field Services*, 499 Fed. Appx. 377, 380-81 (5th Cir. 2012) (per curiam) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146-48 (2000)).

Further, Defendant's contention that in order to succeed on her retaliation claim Plaintiff must prove Deputy McKinney was disabled under the ADA is incorrect. "[I]n order to prosecute an ADA retaliation claim, plaintiff need not show that she suffers from an actual disability. Instead, a reasonable, good faith belief that

---

[12]     The *prima facie* case of retaliation is the same under the ADA and Title VII.

the statute has been violated suffices." *Tabatchnik v. Continental Airlines*, 262 Fed. Appx. 674, 676 (5th Cir. 2008) (quoting *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1264 (10th Cir. 2001)). "By its own terms, the ADA retaliation provision protects any individual who has opposed any act or practice made unlawful by the ADA or who has made a charge under the ADA." *Id*. at 676, n.1 (quoting *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 502 (3d Cir. 1997)); 42 U.S.C. § 12203(a).

With respect to the first element, Deputy McKinney's multiple requests for an accommodation, discussed throughout this Ruling, satisfy this element. *Tabatchnik*, 262 Fed. Appx. at 676 ("It is undisputed that making a request for a reasonable accommodation under the ADA may constitute engaging in a protected activity."). With respect to the second element, Deputy McKinney's termination constitutes an adverse action. *Hassen v. Ruston La. Hosp. Co., L.L.C.*, 932 F.3d 353, 358 (5th Cir. 2019) ("termination is a classic example of adverse employment action under our caselaw."). Thus, the only question remaining is whether there is a causal connection between the activity and the adverse action. The Court finds that there is.

A plaintiff alleging retaliation may satisfy the causal connection element by showing "[c]lose timing between an employee's protected activity and an adverse action against him." *McCoy*, 492 F.3d at 562 (quoting *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997)). Such temporal proximity must generally be "very close." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). The Fifth Circuit has ruled, for example, that a six-and-a-half-week timeframe is sufficiently close, but that a five month lapse without other evidence is insufficient to establish

the "causal connection" element of a prima facie case of retaliation. *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 949 (5th Cir. 2015); *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 472 (5th Cir. 2002); *see also Wilson v. Noble Drilling Servs., Inc.*, 405 Fed. Appx. 909, 913 (5th Cir. 2010) (concluding that one month between was sufficiently close). Here, only two days had lapsed between Deputy McKinney's third request for an accommodation and his termination. Thus, there is sufficient evidence of causality to establish the third element of Plaintiff's *prima facie* case of retaliation.

Once the employee has established a *prima facie* case of retaliation the employer must come forward with a legitimate, nondiscriminatory reason for its action. *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 349 (5th Cir. 2019).[13] Defendant has met its burden by offering non-retaliatory justifications for Deputy McKinney's termination, including: because Deputy McKinney worked eight-hour shifts on certain days and because Deputy McKinney quit coming to work. [Doc. 26-3, p.85-97]. The burden now shifts back to Plaintiff to demonstrate that Defendant's reasons are actually pretext for retaliation.

Plaintiff has proffered sufficient evidence that Defendant's reasons for termination him were pretextual. Defendant informed Deputy McKinney on at least two occasions before terminating Plaintiff's employment that he should retire. Deputy McKinney plainly stated that he did not want to retire. Defendant then

---

[13]    "The employer's burden is one of production, not persuasion, and does not involve a credibility assessment." *Black v. Pan Am. Labs., L.L.C.*, 646 F.3d 254, 259 (5th Cir. 2011).

terminated Plaintiff's employment. Sufficient evidence can also be found in the record through Defendant's varying accounts of the reasons for Deputy McKinney's termination as well as the close proximity of Deputy McKinney's requests for accommodation and his ultimate termination. Plaintiff has raised genuine issues of material fact as to whether Defendant's reasons for his termination were mere pretext. Accordingly, both parties' motions for summary judgment are denied as to Plaintiff's claim of retaliation.

### CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART and Plaintiff's Motion for Summary Judgment is DENIED.

THUS, DONE AND SIGNED in Chambers on this 19th day of March 2021.

DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE